Day, J.
 

 The question is whether the mere violation of an ordinance which prohibits a pedestrian from crossing between street intersections is to be deemed, as a matter of law, the proximate cause of appellant’s injuries.
 

 It is' fundamental that mere negligence on the part of a plaintiff is as insufficient to preclude his recovery
 
 *418
 
 as mere negligence on the part of a defendant is . insufficient to fix his liability. To preclude recovery in the one case, or to fix liability in the other, the negligence, claimed or presumptive, must be shown to have been the proximate cause.
 

 The law presumes negligence from appellant’s violation of the ordinance
 
 (Schell
 
 v.
 
 DuBois, Admr.,
 
 94 Ohio St., 93, 113 N. E., 664, L. R. A. 1917A, 710), but does not, from that presumption alone, presume that such negligence was the proximate cause of his injuries. Although the former is presumed as a matter of law, the latter must be proved as a matter of fact. “Proximate cause and negligence are wholly different elements and should not be confused.”
 
 Blackford
 
 v.
 
 Kaplan, ante,
 
 268, at 273.
 

 Whether appellant’s' negligence was the proximate cause of his injuries is a question which can be determined only from a consideration of all the evidence— a function peculiarly for the jury. Where the state of the evidence is such as to justify different minds in reasonably arriving at different conclusions with respect to that question, or where it is’ doubtful whether reasonable minds would or would not differ in the inferences drawn from such evidence, the question remains one for the jury. See
 
 Durbin
 
 v.
 
 Humphrey Co.,
 
 133 Ohio St., 367, 370, 14 N. E. (2d), 5.
 

 An ordinance of the city of Warren forbade pedestrians to cross between street intersections in the business' district of the city, violation of which, by appellant, constituted negligence
 
 per se (Schell
 
 v.
 
 DuBois, supra).
 
 However, the negligence which the law attributes to appellant is not, in and of itself, sufficient to preclude his recovery. To operate as a bar, his negligence must be shown as a matter of fact to have had a causal relation to and connection with his injuries'. In other words, the negligence which the- law here attributes to appellant must be shown to have been the proximate cause of his injuries. Negligence
 
 *419
 

 per se
 
 and proximate cause are two separate and distinct issues. While one is presumed as a matter of law, the other must, nevertheless, be proved as a matter of fact. Although appellant crossed the street between intersections, in violation of an ordinance, he cannot be held, as a matter of law to have reasonably-apprehended that in so doing injury would result. Even to a pedestrian thus crossing, a motorist owes the duty of exercising ordinary care. It is' true that such ordinance gives to a motorist the right of way between intersections. However, that right is not absolute but preferential only, and the motorist is not absolved from his duty of exercising ordinary care for the safety of pedestrians, rightfully or wrongfully on the highway between such intersections. Whether the cab driver in the instant case exercised such care was a question of fact for the jury.
 

 It is necessary to inquire into the conduct of both the appellant and the cab driver immediately preceding the accident to determine whose negligence it was which furnished the proximate cause. Where negligence is, by law, attributed to a pedestrian, and the record discloses evidence tending to show negligence on the part of the motorist as well, the question still remains as to whose negligence operated as the proximate cause. Unless the state of the record is such that different minds cannot reasonably differ in the conclusion to be drawn therefrom, the question is essentially one for the jury.
 

 We have closely scrutinized the record and do not find it to be thus conclusive. On the contrary, there is ample therein to justify a court in saying that different minds might reasonably differ in the inferences to be drawn therefrom. To illustrate, the record discloses that immediately prior to the accident appellees’ cab was operated at a speed far in excess of the twenty-mile limit fixed by law for closely built-up and congested districts of a city. After hurling appellant
 
 *420
 
 a distance of 80 to 85 feet, the cab skidded on dry pavement for a distance of 50 to 75 feet and was finally brought to a stop a distance of approximately 115 feet from the point of contact with appellant, all of which corroborate the charge of excessive speed. The record further discloses that after appellant had reached a vantage point in the street, he looked in the direction from which the cab was proceeding and observed it a distance of approximately 285 feet away. The street was well illuminated, and it is reasonable to suppose that, in the exercise of ordinary care, appellant could have been observed by the cab driver in ample time to slacken his speed, or to deviate sufficiently from his course to avoid the accident. However, the record is not one-sided, for it also discloses that appellant, after looking once in the direction from which the cab was approaching, proceeded to cross without again looking in that direction. There is enough in the record to cause a court at least to doubt whether different minds could reasonably arrive at the same conclusion as to the proximate cause. When such is the state of the record, the issue is clearly one for the jury
 
 (Durbin
 
 v.
 
 Humphrey Co., supra).
 

 Appellees argue that appellant’s attempt to cross without again looking in the direction from which the cab was approaching, after having once looked and observed the approach of the cab, raises a presumption of contributory negligence as a matter of law. However, there is no requirement in the law that he should look again after having once looked. If, in his judgment, the way seemed clear he was not bound, as a matter of law, to look again. Whether his failure to look again was, under the circumstances then and there present, contributory negligence as a matter of fact, is a question for the jury and not for the court.
 

 A contention similar to the one here was made in
 
 Trentman
 
 v.
 
 Cox,
 
 118 Ohio St., 247, 160 N. E., 715, and
 
 *421
 
 what is there stated, at page 251, is a complete answer to the contention here made. We quote:
 

 “It is the contention of the plaintiff in error that Cox was guilty of negligence as a matter of law because he stated upon the trial that when he walked across the street he looked in the direct path that he was going. Plaintiff in error urges that it is the duty of the pedestrian, after leaving a position of safety, to continue to observe, or at least to look again toward, an automobile known by him to be approaching. No decision from this state is quoted to sustain this position that a pedestrian is guilty of negligence, as a matter of law, if he, after having looked once and plainly seen an automobile sixty-five to eighty feet away, and having judged that he has time to pass in front thereof, proceeds across the street without again looking toward the automobile. Moreover, the general rule is' that:
 

 “ ‘Not only may one cross a street in front of a moving vehicle without his negligence being conclusively established, but it is also held that he need not, as a matter of law, constantly watch the vehicle.’ Huddy on Automobiles (8th Ed.), 611, Section 576;
 
 Bellinger
 
 v.
 
 Hughes,
 
 31 Cal. App., 464, 160 P., 838;
 
 Harker
 
 v.
 
 Gruhl,
 
 62 Ind. App., 177, 111 N. E., 457;
 
 Carradine
 
 v.
 
 Ford, Jr.,
 
 195 Mo. App., 684, 187 S. W., 285;
 
 Knapp
 
 v.
 
 Barrett,
 
 216 N. Y., 226, 110 N. E., 428.
 

 “* * * As a matter of fact, the law does not say how often the pedestrian must look, or precisely how far, or when, or from where. If he looks as he starts to cross, and the way seems clear, he is not bound as a matter of law to look again.”
 

 It is further stated at page 253; “ * * * Knowing that the automobile could swerve out of its course, Cox had the right to assume that it would not continue in its path and deliberately run him down. It is negligence for a driver of an automobile, .having ample space to
 
 *422
 
 pass a pedestrian on the highway, so to guide his vehicle as to strike the pedestrian in passing.”
 

 And again, on page 254, the court said: “Bearing all these circumstances in mind, it was manifestly a question of fact as to whether the.plaintiff walked blindly into danger, and that question of fact should have been submitted to the jury.”
 

 In
 
 Knapp
 
 v.
 
 Barrett, supra,
 
 Judge Cardozo, later justice of the Supreme Court of the United States, said the law does not even say that because a pedestrian “sees a wagon approaching, he must stop till it has passed. He may go forward unless it is close upon him; and whether he is negligent in going forward, will be a question for the jury. If he has used his eyes, and has miscalculated the danger, he may still be free from fault.”
 

 Appellees complain that before argument, upon request of appellant, “the court charged the jury on the duty of the defendants with regard to speed as set forth in General Code Section 12603 * # *. In his general charge * * * the court again charged Section 12603. In both the charge before argument and in the general charge on speed the court used the words
 
 ‘prima facie’
 
 as they áre ¡set forth in the statute, but at no time did the court make any effort to explain to the jury the meaning of these words.” Appellees further complain that since the words
 
 “prima facie,”
 
 as used in Section 12603, General Code, have a technical meaning which is not generally understood, appellees were prejudiced by the court’s failure to explain its meaning. However, the record does not disclose that any request for definition or explanation of that phrase was made by appellees. A like question was raised in
 
 Simko
 
 v.
 
 Miller,
 
 133 Ohio St., 345, 13 N. E. (2d), 914, and the court, in paragraph one of the syllabus, announced that:
 

 * ‘ The omission by a court to define or explain doubtful words or phrases, contained in a statute set forth
 
 *423
 
 in a special instruction to the jury, does not constitute prejudicial error unless a definition or explanation was requested by the party complaining.”
 

 In the opinion, Gorman, J., stated:
 

 “ * * * when the statute contains doubtful words or phrases the court should explain them. Certainly, in this instance, the jury might well not have understood the meaning of the term
 
 ‘prima facie.’
 
 While the jurors are presumed to know the ordinary words of the English language, there is no presumption that they know and understand words of foreign derivation. No attempt was made to define the words in either the special or general instructions of the court. However, it has been held that ‘the omission of a court in its charge to the jury, to define or explain doubtful words or phrases contained in a statute upon which the action is founded, does not constitute a ground of reversal, unless such definition or explanation was requested by the party claiming to have been prejudiced. ’
 
 Schneider
 
 v. Hosier, 21 Ohio St., 98.”
 

 We hold that the trial court did not err in its refusal to direct a verdict for the appellees.
 

 The judgment of the Court of Appeals is reversed and it appearing from the record that the Court of Appeals considered no assignment of error excepting that above reviewed, the cause is remanded to that court to pass upon other errors assigned.
 

 Judgment reversed.
 

 Zimmerman, Williams and Myers, JJ., concur.