JOHNSON, APPELLANT, *v.* EASTERN OHIO TRANSPORT CORP., APPELLEE.

(No. 767—Decided December 3, 1942.)

*Mr. R. N. Larrimer* and *Mr. Edmund L. Matz,* for appellant.

*Mr. Gordon D. Kinder,* for appellee.

PHILLIPS, J. This is an action to recover damages for personal injuries, and comes before this court on plaintiff's appeal on questions of law from a judgment of the Court of Common Pleas entered upon a jury verdict for defendant, a corporation, which is engaged in the operation of a system of busses for the carrying of passengers for hire over and along Ohio state route No. 147, within the corporate limits of the city of Barnesville, where another much traveled, duly dedicated and accepted public highway of that city, known as Gardner street, leads off therefrom in a northerly direction.

There is evidence that plaintiff was a passenger in a model A Ford roadster which, about two o'clock on the afternoon of November 27, 1937, was being driven at a speed of ten to fifteen miles an hour in an easterly direction over and along Ohio state route 147 near Gardner street in the city of Barnesville; and that a short distance west thereof route 147 rises in a westerly direction at a grade of about 11 per cent and reaches the crest of a hill at a point 27 feet east thereof.

Plaintiff testified that when the car in which he was riding was "about 50 or 75 feet" west of Gardner street, and while traveling "about 12 or 15 miles an hour" the driver thereof shifted into second gear, travelled "up to about 12 or 15 feet of the intersection" in that gear, then shifted "into low," gave a hand signal of his intention to turn into Gardner street, traveled thereafter at an estimated speed of "probably five miles an hour, something like that," and turned into Gardner street at a time when he was looking "straight ahead on 147" but didn't see the bus coming; and that "we got the front end of that car just almost on the bricks or maybe on the bricks [of Gardner street] and the bus hit us."

The driver of the car in which plaintiff was riding testified that in shifting into low gear "I had to almost stop to put her in low," and verified plaintiff's testimony as to the hand signal; and that he looked both ways, "gave it some gas to make my [the] turn into Gardner street," "was traveling five to eight miles an hour when he again looked both ways and couldn't see anything," and "* * * never seen no bus." Several other passengers in the automobile also testified that they did not see the bus at any time.

A passenger on the bus testified that the bus "was a little bit late, a few minutes;" that as the bus approached the scene of the collision the windshield wiper with which it was equipped was not in operation," although the evidence disclosed "it was a dark, cloudy, drizzly day;" and that "the driver was continually wiping his eyes with a handkerchief," which action "* * * continued up to the time of the accident."

Another bus passenger testified that as the bus left a bridge situated on route No. 147 about 177 feet east of Gardner street and went "down the straightway" toward the scene of the collision it was "* * * making between 40 and 45 miles an hour."

The driver of defendant's bus testified that he stopped on the bridge to permit another automobile to pass; that the bus crossed the bridge at a speed of about eight or ten miles an hour; that he saw the automobile which was later involved in the collision when the bus was approximately 60 feet east of Gardner street, at which time the automobile was 50 or 60 feet west of Gardner street; that he continued traveling west on route 147 at the same speed, and that as the automobile in which plaintiff was riding neared the point where Gardner leads off therefrom, and when the bus was "almost through the intersection" the automobile was driven sharply to the left directly in front of the bus

when the two vehicles were only eight to ten feet apart; and that the left side of the bus collided with the right front side of the automobile west of the west curb of Gardner street when the bus was traveling about ten miles an hour.

We find no error prejudicial to the plaintiff, as urged by him, in the refusal of the trial judge to permit his witness, House, who was standing near his father's store, situated "about 100 feet, 150 feet" from the scene of the collision, knew the bus, saw it pass on route 147 in that vicinity 200 or 300 times before, saw it on the occasion of the collision, and observed its speed within a distance of 200 feet of the collision, heard the driver accelerate the motor, had his back to, but heard the collision, to testify concerning the speed at which it was proceeding from hearing the "throb of the motor," and the bus proceeding along route 147.

We believe the trial judge gave a good reason for excluding such testimony when he said "I am afraid it would be a case of uncertainty for one to tell how fast a vehicle is traveling from the sound of it."

We are likewise of opinion that the trial court did not err prejudicially to the rights of the plaintiff in excluding testimony of a mechanic having knowledge of the construction of the involved bus and the condition of the brakes thereon a year prior thereto, for the reason that defendant was not charged with negligence in the use of an improperly constructed bus, or one out of repair, or one unfit for use upon the public highways of the state or the city of Barnesville, and for the further reason, as assigned by the trial judge, that the testimony of such witness could be based only "upon the assumption that the busses were in the same condition at the time he worked on them as they were at the time of this collision, and that it would be highly dangerous to let that kind of testimony in."

Plaintiff claims that the driver of the bus tried to leave the impression with the jury that because of the narrowness of the bridge he was obliged to stop to permit an automobile to pass at a point thereon near the easterly junction of the bridge with route 147, and that prejudicial error was committed in the introduction in evidence of a plat of the vicinity of the collision drawn to scale by an engineer after such a map not drawn to scale had been admitted previously, which showed the bridge to be six feet wider than it was shown upon the scaled map. We do not so find.

Plaintiff assigned as an error the refusal of the trial court to submit to the jury special requests to charge before argument offered by him, but counsel for plaintiff in their brief stated "however, in view of the fact that they were not made part of the record we will not extend this brief by referring to them and will rest our case upon the other assignment of error." Accordingly we can not and do not pass upon this assigned ground of error.

Upon the request of defendant and over the objection of the plaintiff the trial judge charged the jury in writing before argument the following propositions of law:

"You are instructed that even if you should find from the evidence that defendant's bus was being driven at a speed greater than was reasonable and proper, if the automobile involved in the collision suddenly turned into the path of the bus at a time when it was not possible for the bus driver to stop or slow up the bus in order to avoid the collision, such turning of the automobile into the path of the bus would be the sole proximate cause of the collision and if you find from the evidence that the automobile so turned into the path of the bus, your verdict must be for the defendant."

"You are instructed that if you find from the evidence that up to the time the automobile turned, defendant's driver did not know and did not have the means of knowing that the automobile involved in the collision would turn toward Gardner street and that he did not have time thereafter to prevent a collision between said automobile and his said bus, there can be no recovery in this case and your verdict must be for the defendant."

"The court instructs the jury that the driver of defendant's bus had the right to assume, until he had knowledge to the contrary, that the automobile which was driven by Pierce would be driven in a lawful manner and that he was entitled to govern his actions in accordance with that assumption."

The submission of the first two such propositions to the jury constituted prejudicial and reversible error.

In the first proposition the trial judge charged the jury that under the conditions named in the charge "such turning of the automobile into the path of the bus would be the sole proximate cause of the collision." We believe the proximate cause of the collision upon the facts presented in this case was an issue for the jury. See *Smith* v. *Zone Cabs*, 135 Ohio St., 415, 21 N. E. (2d), 336, as bearing on the question of proximate cause.

Whether plaintiff could recover upon the facts shown in this case and under the conditions named in the second proposition of law likewise presented an issue for the determination of the jury, and the trial judge erred prejudicially to plaintiff when he submitted such charge to it.

We find no error prejudicial to plaintiff in the submission to the jury of the last quoted special request to charge before argument.

Without reciting in detail the general charge of the trial judge concerning plaintiff's contributory negli-

gence to the place therein where the trial judge and counsel conferred, we believe it is sufficient to say that as a result of a careful perusal thereof the trial judge thoroughly charged on the issue of plaintiff's contributory negligence, and no error prejudicial to the rights of plaintiff was committed in that respect to that place therein.

Ordinarily plaintiff would be chargeable with the exercise of only ordinary care for his own safety.

Plaintiff contends that the general charge of the trial judge placed "upon the plaintiff the absolute duty as a passenger in the Ford automobile to be on the lookout for approaching vehicles." We do not so construe the charge.

Upon conclusion of the general charge and after the "conference of court and counsel," the nature of which is not disclosed by the record, the trial judge further charged the jury as follows:

"You are further charged that if the plaintiff looked to the east along route 147 ahead of the car in which he was riding immediately before entering the intersection in question and did not see the approaching bus, if said bus was then plainly visible from his position, and you further find that plaintiff could have warned the driver of the car of the approach of the bus and thus prevented the collision but failed to do so, you would then be warranted in finding plaintiff guilty of contributory negligence."

Plaintiff objected to the quoted charge and contends that:

"After the jury were fully and completely charged and after the case was practically placed in their hands and instructed as to how to fill out their verdict, for the court to again charge on the contributory negligence even if the charge were correct put too great an emphasis on that phase of the case and lead the jury to believe that the court wanted them to particu-

larly look into the question of contributory negligence and to believe that the court felt that there was a serious question at least as to whether plaintiff was guilty of contributory negligence.''

The correctness of the charge as submitted is questionable. However, assuming, but not determining that the above quoted portion of the charge is correct, the conclusion is reached that the submission of it to the jury emphasized the issue of plaintiff's contributory negligence unnecessarily, and constituted prejudicial and reversible error.

''As a general principle, also, the trial court should avoid giving instructions which are, to an unreasonable degree, repetitions of the same legal propositions given in other parts of its charge, especially where the result would be to give undue prominence to the propositions repeated. In other words, when a proposition has once been clearly given, the court ought not to repeat it in varied form of expression, though equally correct; and if the charge as already given is commendably short, it is more essential that no particular statement as to fact or law should be unduly emphasized by repetition.'' 39 Ohio Jurisprudence, 935, Section 256.

Obviously from what has been said the two-issue rule can not be invoked in this case.

Viewing this case as we do, we believe it is unnecessary to pass upon the assigned ground of error that the verdict of the jury is against the manifest weight of the evidence.

The judgment of the trial court is reversed and the cause is remanded thereto for further proceedings in accordance with this opinion.

*Judgment reversed and cause remanded.*

CARTER, P. J., and NICHOLS, J., concur.